NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0580n.06

No. 20-4063

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Oct 09, 2020
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| A. PHILIP RANDOLPH INSTITUTE OF OHIO, et al., <br><br>     Plaintiffs-Appellees, <br><br> v. <br><br> FRANK LAROSE, <br><br>     Defendant-Appellant. | ) ) ) ) ) ) ) ) ) ) ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

ORDER

BEFORE: GRIFFIN, WHITE, and THAPAR, Circuit Judges.

GRIFFIN, Circuit Judge.

The Supreme Court has repeatedly emphasized that lower federal courts should ordinarily not alter election rules on the eve of an election. *Republican Nat'l Comm. v. Democratic Nat'l Comm*., 140 S. Ct. 1205, 1207 (2020) (per curiam). Here, the district court went a step further and altered election rules *during* an election. The district court enjoined Ohio Secretary of State Frank LaRose from enforcing his directive that absentee ballot drop boxes be placed only at the offices of the county boards of elections. Secretary LaRose appealed to this Court, and now moves for an administrative stay and a stay of the district court's injunction pending appeal. Plaintiffs have responded. For the reasons set forth below, we grant the motion for a stay pending appeal and dismiss the motion for an administrative stay as moot.

I.

Plaintiffs, a collection of non-partisan civil rights organizations and individual voters, filed this challenge on August 26, 2020, to Directive 2020-16, which concerns the placement of drop boxes for the collection of absentee voters' ballots. They claimed that the Directive, which was promulgated by Ohio Secretary of State Frank LaRose, represented an unconstitutional infringement on Ohioans' right to vote. Shortly after filing their complaint, plaintiffs moved for a preliminary injunction asking the court to enjoin Directive 2020-16 "to the extent that it would limit county boards of elections to a single ballot drop box at the board office." In response, the district court enjoined Secretary LaRose from "enforcing that portion of Directive 2020-16 that prohibits a county board of elections from installing a secure drop box at a location other than the board of elections office," and from "prohibiting a board from deploying its staff for off-site ballot delivery." Secretary LaRose filed an interlocutory appeal of the district court's order the same day, and the intervenor-defendants have also filed an interlocutory appeal. Secretary LaRose has filed an emergency motion in our court seeking an administrative stay and a stay pending appeal.

II.

This Court considers four factors when considering whether a stay pending appeal is appropriate: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). When evaluating these factors for an alleged constitutional violation, "the likelihood of success on the merits often will be the determinative factor." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *see also Bays v. City of Fairborn*, 668 F.3d 814, 819 (6th Cir. 2012) ("In First Amendment cases,

however, the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits. This is so because . . . the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the state action." (internal quotation marks and alteration omitted).

The merits of Plaintiffs' claims are analyzed under the "*Anderson Burdick*" framework. In *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992), the Supreme Court articulated a "flexible standard," *Burdick*, 504 U.S. at 434, for evaluating "[c]onstitutional challenges to specific provisions of a State's election laws." *Anderson*, 460 U.S. at 789. The first step of the *Anderson-Burdick* framework requires us to "determine the burden the State's regulation imposes on the plaintiffs' First Amendment rights." *Hawkins v. DeWine*, 968 F.3d 603, 606 (6th Cir. 2020) (citation omitted). "[W]hen those rights are subjected to 'severe' restrictions," the regulation is subject to strict scrutiny and "must be 'narrowly drawn to advance a state interest of compelling importance.'" *Burdick*, 504 U.S. at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). But when those rights are subjected only to "reasonable, nondiscriminatory restrictions," the regulation is subject to rational-basis review and "the State's important regulatory interests are generally sufficient to justify" the restriction. *Id*. (quoting *Anderson*, 460 U.S. at 788). "For cases between these extremes, we weigh the burden imposed by the State's regulation against 'the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Thompson v. DeWine*, 959 F.3d 804, 808 (6th Cir. 2020) (internal quotations marks omitted) (quoting *Burdick*, 504 U.S. at 434).

Here, Directive 2020-16 prohibits county boards of elections from "installing a drop box at any other location other than the board of elections." Notably, Ohio voters are not required to

use a ballot drop box to vote. And we have acknowledged that "Ohio is generous when it comes to absentee voting," even though "there is no constitutional right to an absentee ballot." *Mays v. LaRose*, 951 F.3d 775, 779, 792 (6th Cir. 2020). Voters may (1) vote in person on election day, (2) vote in-person for more than four weeks before election day, (3) mail in an absentee ballot; or (4) drop off an absentee ballot at a drop box. Thus, a limitation on drop boxes poses at most an inconvenience to a subset of voters (those who choose to vote absentee *and* physically drop-off their absentee ballot). It surely does not impose a "severe restriction[] on the right to vote" and therefore does not trigger strict scrutiny. *Id*. at 784. Moreover, the State cannot be faulted for these voters' choice to not take advantage of the other avenues available to them to cast their ballot. *Id*. at 786 ("Plaintiffs' choice to not participate in the opportunities Ohio provides to vote . . . was, at least in part, the cause of [plaintiffs'] inability to vote.")

In all, we conclude that Ohio's restrictions are reasonable and non-discriminatory and thus subject to rational basis review. *See Mays v. LaRose*, 951 F3d 775, 791-92 (6th Cir. 2020). But even if we subject them to mid-level scrutiny, they easily pass constitutional muster for the following reasons.

First, Directive 2020-16 promotes uniformity, which in turn promotes the fair administration of elections. Courts have consistently recognized a state's interest in the "orderly administration of elections." *Mays*, 951 F.3d at 787. Second, Directive 2020-16 promotes the state's efficiency interests in administering elections. "[T]he list of responsibilities of the board of elections is long and the staff and volunteers who prepare for and administer elections undoubtedly have much to accomplish during the final few days before the election." *Id*. (quoting *Obama for Am. v. Husted*, 697 F.3d at 432–33. This efficiency interest is particularly important where, as here, voting is already in progress. Third, limiting drop boxes to one location per county

promotes the accuracy of the election. According to LaRose, voters who return a ballot to the wrong drop box run the risk of having their ballot rejected. (citing Ohio Rev. Code § 3509.05(A)). Fourth, the Directive 2020-16 promotes the security of the election. As noted by LaRose, Ohio has never before used off-site drop boxes. Implementing off-site drop boxes now would thus require on-the-fly implementation of new, untested security measures.

All of LaRose's reasons for implementing and enforcing Directive 2020-16 concern important state interests. And these state interests, taken together, justify the burden that it places on this one method of voting in Ohio. Accordingly, we conclude that LaRose has made a strong showing that he is likely to succeed on appeal.

Moreover, the other three factors all support granting the motion for a stay pending appeal. First, not granting the stay could irreparably harm Ohio's election process. The resources (time, money, etc.) available for preparing for an election are finite and rivalrous. Without a stay, at least some instrumentalities of the state might spend resources setting up off-site drop boxes, which they may then be required to remove if LaRose prevails on appeal. Those are resources that state could have spent on other election "tasks necessary to preserving the integrity of the election process, maintaining a stable political system, preventing voter fraud, and protecting public confidence." *Mays*, 951 F.3d at 787.

Second, the stay is unlikely to harm anyone. As discussed above, Ohio offers many ways to vote. Given all of those options—including on-site drop boxes, casting a vote by mail, and voting in-person weeks before election day—the absence of off-site drop boxes does not impose a material harm.

Third, granting the stay is in the public interest. Immediate implementation of the district court's injunction would facilitate a grave risk of voter confusion. *See Purcell v. Gonzalez*,

549 U.S. 1, 4–5 (2006) ("Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase.") The public interest would be best served by consistent rules regarding how to vote during the pendency of this lawsuit.

III.

Federal courts are not "overseers and micromanagers" of "the minutiae of state election processes." *Ohio Democratic Party v. Husted*, 834 F.3d 620, 622 (6th Cir. 2016). The district court in this case altered election rules during an election and in disregard for Ohio's important state interests. Because we conclude that a stay pending appeal is appropriate, we grant Secretary LaRose's motion for a stay pending appeal, dismiss the motion for an administrative stay as moot, and stay the district court's preliminary injunction.

HELENE N. WHITE, Circuit Judge, dissenting.

I would not stay the district court's order. It is true that the federal courts should ordinarily "not alter election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam). This is because "[w]here a legislature has significantly greater institutional expertise, as, for example, in the field of election regulation, the Court in practice defers to empirical legislative judgments." *Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377, 402, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000) (Breyer, J., concurring).

Here, the legislature crafted a statute that neither "prescribes nor prohibits ballot drop boxes at locations other than the board of elections," *Ohio Democratic Party v. LaRose*, 2020-Ohio-4778 (Ohio Ct. App. 2020), and places primary responsibility for administering elections in bipartisan county boards of elections. These boards have the duty to oversee the administration of elections, including the duty to "[f]ix and provide the places for registration and for holding primaries and elections." Ohio Rev. Code Ann. § 3501.11. To be sure, the Secretary has the statutory authority to issue directives, but the Secretary's statutory authority is not at issue. Plaintiffs challenge the constitutionality of the directive, an issue squarely within the authority of the federal courts to determine.

Although federal courts are instructed, in ordinary cases, to refrain from altering election rules close in time to an election, this is not an ordinary case. Here, unlike the cases in which such rules were announced, *see Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam); *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam); *Andino v. Middleton*, No. 20A55, 2020 U.S. Lexis 4832, *2–3 (U.S. Oct. 5, 2020) (Kavanaugh, J., concurring in grant of stay); *Little v. Reclaim Idaho*, 140 S. Ct. 2616, 2616–17 (Roberts, C.J., concurring in the grant of stay), Plaintiffs are not challenging the application of a statute drafted and debated by

a legislature, or an election rule determined by referendum. Nor are they challenging the application of a rule that has long applied to elections in Ohio. Instead, Plaintiffs ask the federal courts to determine the constitutionality of an eleventh-hour directive issued unilaterally by a single elected official to disrupt the established plans of bipartisan county boards of elections endeavoring to perform their duty to administer a fair and orderly election in their jurisdictions. The Secretary of State claims that he is seeking a stay in order to "preserve the status quo." But it was the Secretary's last-minute directive that disrupted the status quo by banning county boards of elections from exercising their discretion regarding the location and number of ballot drop boxes needed to facilitate orderly administration of the November election. The district court's order merely returns the administration of Ohio's elections to the status quo, enacted by the legislature, that existed prior to the Secretary's last-minute (and very recent) order, until the constitutionality of the Secretary's order can be adjudicated on the merits.

The Secretary initially took the position that the R.C. 3509.05(A) forbids election boards from having multiple, off-site ballot locations within a single county. *Ohio Democratic Party*, 2020-Ohio-4778 at *1. The Ohio courts determined that the Secretary's interpretation was incorrect and that such additional locations were neither prohibit nor mandated. Prior to the state-court decision, the Secretary stated that he would allow off-site drop boxes if a court determined they are permissible under the statute. The Secretary then changed his mind. The county elections boards are bipartisan, with of two Democrats and two Republicans. Although the Secretary has overall control of the election, and may promulgate directives, the individual county boards are granted the authority to control the local aspects of elections. *See* Ohio Rev. Code §§ 3501.04, 3501.05, and 3501.11. This makes sense; county populations, geographic dimensions, and

infrastructure vary considerably throughout the state. Cuyahoga County has 850,000 voters: Noble County has under 10,000. R. 91, PID 2921.

Plaintiffs presented considerable evidence that voters in the largest counties will suffer significant burdens as a result of the Secretary's directive limiting the ability of the county boards to implement bipartisan plans tailored to best administer efficient, safe, and secure voting in their counties. *Id.* at 2920–22. The Secretary's asserted interests in uniformity, secure and orderly elections, avoidance of voter confusion and public confidence in the integrity of the electoral process, Appellant Motion at 17–20, are not served by the Secretary's directive.

The Secretary's asserted interest in uniformity ignores that each county has its own bipartisan election commission with knowledge of the county's needs. Uniformity in the number of ballot drop-off locations across counties with 850,00 voters and counties with less than 10,000 voters promotes unequal, rather than uniform, voting opportunities.

The Secretary has not shown that the proposed locations at the libraries staffed by elections officials will undermine the security and orderly of the election. R. 91, PID 2922–24. Nor has the Secretary shown that the plan will lead to voter confusion. *Id.* Any confusion is a result of the Secretary's changing positions. Finally, public confidence in the integrity of the electoral process is served by allowing Ohio citizens to have the best chance of having their votes safely cast and their ballots counted, subject to strict supervision by local bipartisan election commissions.

In sum, I would not find that the district court, after conducting evidentiary hearings with multiple witnesses, and analyzing significant briefing, abused its discretion in enjoining what it determined to likely be an unconstitutional directive issued by a single elected official, impacting the voting rights of thousands of citizens. Although last minute injunctions issued during an election are usually disfavored, the justifications for such a rule are not present in this case. The

status quo, created by the legislature, will be preserved by the district court's injunction. Moreover, to hold that the constitutionality of a last-minute order by a single state official impacting the voting rights of thousands of citizens may not be adjudicated until after their right to vote has been disrupted applies Supreme Court precedent to an inappropriate context.

For the foregoing reasons, I dissent.

ENTERED BY ORDER OF THE COURT

_____

Deborah S. Hunt, Clerk